Good morning. If it pleases the court, my name is Michelle Uzeta, and I represent the plaintiff appellant Ashley Christina McClendon, and I'd like to reserve four minutes for rebuttal. I apologize in advance for my voice. I tested positive for COVID two days ago when I'm having trouble. Well, first, can we turn her volume down a little? It's a little loud. I don't know how to do that. Counsel, can you please turn the volume down on your end? It's a little loud. Thank you. Your voice sounds fine. Yeah, we can hear you very well. Is that better? Yes, that's better. Okay, thank you. As set out in Ms. McClendon's papers, this is an appeal from the summary judgment order on her reasonable accommodation claim, as well as the judgment on her statement of preference claim after a trial on the briefing. I'll start by addressing the partial summary judgment order. The only element of Ms. McClendon's reasonable accommodation claim that was in dispute was whether breasts are new or reasonably should have known that she had a disability. These are two alternative standards, one reflecting actual knowledge, the other constructive knowledge. Now, can I interrupt and ask, do we know that she's disabled within the meaning of the statute? Yes. How do we know that? The records that were submitted to the district court, that issue was never put into dispute by the defendant in this case. So it's our position that the district court erred by not allowing the issue of Mr. Bressler's knowledge to proceed to a jury. There was sufficient evidence putting the knowledge element into dispute, including the July 25th rental application that disclosed that the household... Why don't you stop for a second? I'm sorry. Okay, sorry. Okay. The evidence included the July 25th rental application disclosing one registered support animal, Mr. Bressler's July 26th email to not to accept dogs, even if service dogs. And then there were two emails from Gailey to Bressler on July 27th that explained that the dog is, and I quote, a verified emotional support animal covered by the ADA as a reasonable accommodation. And, and again, I quote, an emotional support animal covered by federal ADA laws protecting reasonable accommodation requirements. These emails from Ms. Bressler noted that it's illegal to discriminate against a prospective tenant based on their need for a support or service animal. And these correspondence are in the record. Advertisement for this apartment indicated no dogs. Is that right? Correct. So why, why did, why was an application even made? Because under the Fair Housing Act and also state fair housing law, housing providers are required to make a reasonable accommodation by allowing support dogs and service dogs when required for disability, even if the policy is a general no dogs policy. And there's in my briefing on the case, some cases that have held that are included in there. All of the communications between Gailey and McClendon were either in reference to disabled people or reference the laws and rights of disabled people. And despite acknowledging that this evidence supports an assumption, and I'm using the court's words that McClendon and or Gailey had a disability, the court went on to conclude that it was not a disability. And in the case of Mr. Bressler, his deposition was taken on July 22nd and relevant portions are included in the record. This testimony demonstrates Mr. Bressler's understanding of what was being requested by Ms. McClendon and Ms. Gailey and why they were requesting it. He testified that he was aware of the ADA and familiar with support animals, that he knew people with support animals have certain access rights, including in the housing context. He described those rights as just common knowledge. Most significantly, he testified that he added the phrase, even if service dogs to his email that was describing his no dog policy to specifically respond to the fact that McClendon and Gailey's rental application included a request for support animal. He further testified that he did so with the intent of conveying that he would not accept dogs, even if needed, due to a condition like blindness, a disability. And the court should have, but did not consider any of this when the applicant was disabled? Correct. But again, we would turn to the requirements for reasonable accommodation claim, which required... No, no, but in communicating with them. Right. There's no dispute that no one said Ms. McClendon has a disability. That was not that explicit, but we contend it did not have to be. It's our position that the court also erred by not having an interactive process with Ms. McClendon and Gailey regarding the request for an emotional support dog. Ms. Gailey specifically asked Bressler in her email communications to let her know if she missed anything, or if there was more information she could provide. You said that it's not disputed, at least at this point, that your client is disabled within the meaning of the statute. If this were to go to trial, would that question be open? That's a question for Mr. Vaughn. I don't believe that it's an issue. There were substantial records confirming multiple disabilities. No, I'm not talking about what's in the record now. I'm talking about what happens if it goes to trial. Again, that would be a question for Mr. Vaughn. It's my understanding that the issue of Ms. McClendon's disability is not disputed. Well, let me ask it this way then. Assuming that Mr. Vaughn, and I don't want to put words in his mouth, but assuming that he wishes to contest the disability within the meaning of the statute, would that be open at trial? I believe so. Okay. Because the reason I say that is there are an awful lot of support animals out there for which the disability is relatively minor. That's correct. In the context of an emotional support animal, the bar is not terribly high. Ms. McClendon does have verified disabilities, verified by a number of her medical professionals. At the point if a housing provider has some question, believes that a support animal request may be fraudulent or something like that, it's incumbent on them to ask for further documentation, which they're entitled to do if the disability is not obvious. And that gets to this point of Mr. Bressler's failure to engage in an interactive process. He didn't request any additional information from the applicants, despite understanding what was being requested. He responded to the rental application using a term of art that is service animal, and he knew what that term meant. So it's not like he did not know what was being requested, and he refused to engage in any further discussion. And this failure to engage in an interactive process runs contrary to guidance materials from the Department of Justice and the Department of Housing and Urban Development, as well as existing case precedent in the Central District. Although this court held in Howard v. HMK Holdings that there's no stand-alone liability for the failure to engage in an interactive process under the Federal Fair Housing Act, it's still relevant. That case stated at page 1192 that the interactions between tenant and landlord are, of course, relevant. Other case law in this district, including Rodriguez v. Morgan and Smith v. Powdrill, have held that if a landlord requires additional information that's incumbent upon them to request that information, the failure to do so can be considered when evaluating someone's reasonable accommodation claim. And HUD and DOJ materials also cited in the briefing are very clear on those points as well. And it may be worth noting, maybe not, that under California's Fair Housing Statute, the interactive process is actually required, and that citation is California Code of Regulations, Title II, Section 12177, Subsection B. The failure of Mr. Bressler to engage in an interactive process is particularly relevant here. In its order, the district court stressed how Mr. Bressler was not informed of Ms. McClendon's mental impairment or how it substantially limits one or more of her major life activities. However, this is exactly the type of additional or clarifying information that is incumbent for housing providers to ask for using the interactive process. And on this point, I'd refer the panel to the HUD's FHEO notice on how to process assistance to animal requests. This is specifically dealt with in that document that predates the basis for this complaint. Is it a reasonable policy for a landlord not to want to lease apartments to people with dogs in general? Yes, in general, there's a lot of no-dog housing. But housing providers have been required for a very long time to make accommodations for people who require service animals. And that accommodation is a modification of that no-dog policy. I'd like to move on quickly because my time is getting short on the court's judgment on plaintiff's discriminatory statement claim. The district court erred when it characterized the statement that it was his policy not to accept dogs, even if service dogs, as simply a preference for renters without dogs. Our contention is that this represents an overly narrow view of the scope of statements prohibited under Section 3604C. Now, would you make the same argument if he had said, I have a blanket policy, no exceptions, no dogs? That becomes a little stickier of a question. The fact that I would contend that... Why is that a different statement? Because he's clarifying here, even if service dogs. Well, but the statement I just gave you also makes that very clear. I don't know that that would be a case I would take to trial because I think there's wiggle room there. But if you're saying even if service dogs, you're putting a dot on the I there, that that's an exception that you're not going to make, which indicates both that you are not going to accommodate someone who has a service dog and that you won't make accommodations generally for people with disabilities with service dogs. And it is solely people with disabilities who use service dogs. There's no doubt. Help me understand the underlying cause of action here. Is the idea that you cannot have animus towards someone with disabilities? What's the standard that you're trying to satisfy here? Under the discriminatory statement claim? Yes. It's that the publisher or speaker of the statement is reflecting an impermissible preference limitation or discrimination or an intent to make such a preference limitation or discrimination. And here we contend that... Against disabled people. Correct. But again... I don't see where he said that. Well, by saying that he... You can infer from that simply by virtue of his policy with respect to dogs. Right, but he... You're basically saying because he didn't want a service dog, therefore he was discriminating against disabled people, which is a statutory word, isn't it? You have to show discrimination against the disabled. Well, section 3604 prohibits statements that exhibit any kind of preference. It doesn't require a ban on people with disabilities. With disabilities, yes, that's a general statement. But I don't see that what he said here satisfies that. Well, and we would contend that by saying even if service dogs conveys his intent that he's not waiving his no dogs policy to accommodate a service dog user who, again, is going to be someone with a disability. And I think that the HUD guidance regarding advertisements under 3604C, which I discuss in the reply brief at pages 21 and 22, is illustrative on this point. The guidance identifies the phrase no wheelchairs as an example of a statement that would violate 3604C. And similar to assistance animals, wheelchairs are assistive aids that are linked exclusively... Yes, but the wheelchair example specifically targets... If you're prohibiting wheelchairs, you are... The set of people that you're discriminating against are almost by definition disabled. If you're saying no dogs, that can include, of course, service animals, but it's a much broader category than that. And let me come back to what you need to show. I mean, we're very familiar in various areas of the law in the difference between discriminatory effect and discriminatory purpose. And this clearly has a discriminatory effect, as you view the case. I get that. But is something more than discriminatory effect required under the provision you're now relying on? Well, I don't quite know how to answer that question. I would just go back to saying that we think there's discriminatory intent there when Mr. Bressler went further than saying, I don't want dogs, to saying, even if service dogs. Because, again, that indicates an unwillingness to accommodate a service dog user, who by definition, just like the wheelchair example, is someone who has a disability. I'm trying to figure out, what's the difference here between simply saying, I won't accommodate, when he knows what the request for accommodation is based upon, and I won't accommodate even for service animals? I don't know that there is a difference. Okay. But I may not be understanding your question. I apologize. What is the difference between your two causes of action, as a practical matter? Are they, are you just, do they, does the second one that we've just been discussing add anything to the first, if you're successful on the first? No, I don't believe so. They're kind of part and parcel of the same. Although, again, you know, by saying, even if service animals, to an ordinary person, that would convey that I'm not going to make an accommodation for someone who uses a service animal. And with that, I'll save the rest of my time on rebuttal. Thank you. You're over your time. Thank you. Ms. Vaughn? Mr. Vaughn? Pleasure, Court. Thank you. I would like to start with the last argument, order and judgment after trial on the briefs. There are a couple of preliminary things, though, that I think need to be clarified so that we're all talking about the same thing. First, this is not a service animal case. Second, it's not an ADA case because ADA would only apply to service animals. It's not an emotional support animal. The other preliminary point that I wanted to make was that all of the interactions are contained in the record at ER50 through ER55. This was some middle of an application, and within a couple of days, some emails back and forth. It was the extent of the communication between the two. The court's understanding, I believe, is absolutely correct that at no point in time was Mr. Bressler ever informed that Plaintiff McClendon claimed to be disabled and that that disability required a dog in order for her to be able to resign as a resident. The only communication here is between Gailey, a co-applicant, and Mr. Bressler. The other thing I'd like to point out is that with regard to this issue of whether there is a preference or limitation stated, the statement is made in one of the emails in this exchange. The statement is, quote, this is on ER53, my policy has been not to accept dogs, even if service dogs. And he goes on to say, what is the weight of the dog? This is an email that includes a request for additional financial information. So it's clear from context, and it's clear that 3604C has to be viewed in context. It's not simply a statement by itself in a vacuum, that this is a response to the application asking for more information both as to the nature of the dog as well as for more financial information and clarification about other financial details. So it's not a situation as to this particular statement, it's been my policy not to accept dogs, even if service dogs, that this is made by itself indicating I will never under any circumstances accept a dog. In fact, in his deposition, Mr. Bressler testified one of his tenant properties has a dog. So it's not a situation here that the court got this wrong, the court got this right, that this is not a statement that to an ordinary reader would convey a preference or limitation. So help me with this. My issue on this case is that these seem to be factual questions and not questions that can be resolved in summary judgment. We're asking about what this language would mean to a reasonable person, and there's certainly enough words used that some people, perhaps even Mr. Bressler, would understand that we're talking about a person who at least is claiming a disability and claiming to need a service dog to reside with her. There's two different contexts as a result of two different actions by the district court. The first is with regard to the order in judgment after trial on the preference or limitation claim. So with regard to the fact question there, the court, properly in its exercise of its fact-finding role, made a finding of fact. And, of course, with regard to a order in judgment of this type with findings, it's a clearly erroneous standard that this court would apply to those findings. And the district court found that an ordinary reader would not interpret those to be stating a preference or limitation when viewed in context. Now, with regard to the granting of the summary judgment to defendant on the issue of failure to reasonably accommodate, the question there is whether or not there's a fact question in this court finds that there's a fact question that would require that issue to go to a fact finder. Can I interrupt and ask the following question? I want to focus on your understanding of the statute. Let's assume that we have someone who, without any question, is disabled within the meaning of the federal statute. And let's assume that the person has a support animal, a dog, that's necessary because of the disability. Does a landlord have an obligation under the statute to engage in an interaction to determine whether or what would be a reasonable accommodation? Not under federal law. Because? Yeah, yeah. Because the service animal or, I'm sorry, the support animal, emotional support animal is not covered by ADA and 3604, it would still require notice or knowledge on the part of the landlord that there was a disability, that the dog was a necessary thing. No, no, let me make my question more clear. I assume that the landlord knows this. The landlord has been told that I am a disabled person within the meaning of the federal statute and that my support animal is necessary to take care of me with my disability. Does the landlord at that point have an obligation to engage in the interactive process to determine what might be a reasonable accommodation? Not in this circuit for these reasons. Number one, Howard v. H&K Holdings, which has been talked about in the briefing, indicates that there's no stand-alone liability and that the question is not evaluated in a vacuum. The second is the cases that are cited by counsel, Rodriguez v. Morgan and Smith v. Power Drill. Neither are this fact pattern. They're just easily distinguished. First, they're both. When you say this fact pattern, are you talking about the fact pattern of this case or the hypothetical that I just gave you? Either one. I would say both in terms of my response now because in both of those cases, they are existing tenants. Number one. Number two, they are requesting accommodation for a known disability and it is a situation where the landlord did not ask for additional information, but in the context of knowing that the person has a table, the person's request is accommodation, they had that obligation to go farther than that. But that's not the case here. In this particular fact pattern that we're dealing with, that was not established in terms of your hypothetical. Okay. I'm just more interested in the hypothetical for the moment. Well, in terms of the hypothetical, if the landlord knows a person is disabled, knows their request for accommodation, is there an obligation for an interactive process? No. Based upon Howard and the distinguishing of the other two cases. What would, in the case of a dog and the necessity for a service animal, what would this interactive communication consist of? The disabled person either needs the dog or doesn't. What is it? Is it finding some alternative? I'm just trying to understand what this communication would be like. The question, I think, is, is there some obligation on the part of the landlord to do something else when that information is communicated? Just trying to think of what the something else would be, to find her another apartment with another landlord who would be willing to accept a service animal. I'm just trying to think of, as a practical matter, given the nature, given the disability and the particular accommodation, which is that she needs the dog in order to enjoy the apartment, I'm trying to think of what else there would be to say beyond what was already said. Well, what else would need to be found out? I don't think anything, nothing. That would be the observation that I would make, that there's nothing else that needs to be found out. As a result, there's no need for an interactive process and failure to engage in an interactive process does not result in some sort of liability. Although maybe we did have an interactive process to the extent that one is relevant for a dog. He asked about the size of the dog. The response is, well, it's a big dog. It's an old dog, doesn't bark, not destructive. And he responds, well, my sense of old dogs is that they have trouble. They have urinary incontinence problems, so an old dog is a problem. I mean, there was some interaction. There was. That's correct, and that was one of my later points was that there was an interactive process that actually happened here, and to the extent that any interactive process is required, which I don't believe there is, it was done here. With regard to continuing with the failure to accommodate claim and the summary judgment ruling, the court's determination that there was not sufficient facts to raise a tribal issue is well set out and well described there in the sense that while it's not necessary to use some sort of magic word like support animal, it is necessary to inform the landlord that a person has a disability, is requesting accommodation, and what the nature of that accommodation is. None of that happened here. Communication is only with Galey. The landlord is put in a position where they have to say something other than receive the information and make a decision to rent or not rent. This is all solved by simply saying, I have a support animal, I have a disability, a support animal to assist me with. Please accommodate me to have that support animal. None of that was done here. Again, different from a service, a dog context, there's simply, as the district court found, a lack of information for Bresler to be held to the standard of knew or reasonably should have known, and that's the standard that applies to this failure to accommodate, and on that I would rest absent questions from the court. Your adversary argues that he should have known, that he had constructive knowledge. Who else other than a disabled person would need a service animal? Well, again, I think it's not a service animal in the sense of an ADA, it's a support animal here, but for the landlord to make a decision about support animal, no support animal, what's the support animal for and who needs it? Well, but your client was very specifically provided, told in the email from Gailey, she's, meaning the dog, she's a verified emotional support animal covered by the ADA as a reasonable accommodation. That's pretty clear. It may or may not be true, but it's a pretty clear statement. Well, I think that it's, on its face it's a clear statement, but it's an inaccurate statement because it's a support animal. But how does he know it's an inaccurate statement? I don't even know it's an inaccurate statement. I've been looking at the record. He's just responding to an email. Well, and the point is that's all he had to respond to. Well, yeah, but that kind of sounds like should have known. Well, but he had no information that it was a person with a disability claiming a need for a support animal. Well, wait a minute. How am I supposed to interpret that language? The dog is a verified emotional support animal covered by the ADA. How can it be clearer? It simply needs, in my position, in my class position, it needs to say Anne McClendon or Anne the tenant needs this dog to live here. Well, that's the second half of the sentence, covered by the ADA as a reasonable accommodation. Now, you're asking for magic words, it seems to me. This seems pretty clear to me, and I repeat, it may or may not be true, but this is a very clear statement. And then she follows with, it is illegal to discriminate against a prospective tenant based on their need for a support or service animal, which is language that comes straight out of the guidance to the statute. I'm looking for that statement. I'm sorry. ER 55. Yes, I see that. I see that statement. I believe this was after the decision was made, would be point number one. And secondly... Actually, it isn't.  which is that it is illegal to discriminate against a prospective tenant saying I will be refunding your application fee when I make a final decision. I stand corrected. I think the point here is that he's still not told that the prospective tenant is McClendon, and that McClendon needs this animal in order to be able to live here. That's what he's not told. And on that, I believe the district court was correct that there was not sufficient to show that a wrestler knew or should have known, which is required for somebody. Yes. They denied, so they weren't allowed to rent the place, right? That's correct.  Only what's in the record of 50 to 55. Because otherwise, they look pretty solid as tenants. I mean, employed at the Harvard Westlake School and three of them paying the rent. I mean, it sounds pretty like solid tenants to me. In fact, as I recall, there was an offer of more money to accommodate the dog. Am I recalling that correctly? There is a statement to that effect in the record. I don't know exactly where, but there was a statement made. Okay. Well, you're well over your time, too. Ms. Zetta, I'll give you one minute so that you're equal, so that you have equal time. Thank you. The only thing that I'd like to address is the interactive process. The panel had asked what additional information could possibly be necessary in a case like this, and I would contend that it's the things that Mr. Vaughn is claiming his client didn't have, which is specifically which tenant of Galen and McClendon needed the animal and for what purpose. And that's exactly the type of information that the interactive process is intended to solicit. If you refer to the HUD FEHO notice as well as the HUD DOJ statement, which I've addressed in my briefing, both of them put out there that if the housing provider requires more information about the disability or the need, that this is the process to get that information. And the Howard case does not change that. This circuit held in the Howard case that the failure to engage in an interactive process is not a standalone claim under the Fair Housing Act. It did not negate any of the DOJ materials or the cases cited. And with that, I will end. Thank you for the time. Thank you very much, counsel. McClendon v. Bressler will be submitted, and we will take up Mitchell v. Specialized Loan Servicing.
judges: WARDLAW, FLETCHER, Korman